UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MAKSIM ZASLAVSKIY,<br><br>           Defendant. | 17-CR-0647 (RJD) (RER) |

## MEMORANDUM OF LAW SUPPORTING MAKSIM ZASLAVSKIY'S
## MOTION TO DISMISS INDICTMENT

POLSINELLI  PC
Jason A. Nagi
600 Third Avenue, 42nd Fl.
New York, NY 10016
(212) 644-2092

Richard B. Levin
(*Pro Hac Vice* to be submitted)
303.583.8261
1401 Lawrence Street, Suite 2300
Denver, CO 80202

*Attorneys for Recoin Group Foundation, LLC; DRC
World Inc. a/k/a Diamond Reserve Club; and
Defendant Maksim Zaslavskiy*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

PROCEDURAL BACKGROUND...............................................................................2

FACTUAL ALLEGATIONS .......................................................................................3

APPLICABLE LEGAL STANDARDS........................................................................4

    I.      FEDERAL RULE OF CRIMINAL PROCEDURE 12(b)(3)................................4

ARGUMENT................................................................................................................5

    I.      THE SEC'S FAILURE TO ADOPT RULES WITH RESPECT TO THE
             REGULATION OF DIGITAL ASSETS VIOLATES THE DUE PROCESS
             PROTECTIONS OF THE U.S. CONSTITUTION AND THE APA....................5

           A.     SEC Acknowledgement of the Need for Regulation of Digital Assets.......6

           B.     The Problem with Characterizing Digital Assets as Securities..................7

           C.     SEC Enforcement Actions ........................................................................8

           D.     The APA and Rule Making........................................................................9

    II.     MAKSIM DID NOT SELL "SECURITIES"....................................................10

           A.     CRYPTOCURRENCIES ARE A FORM OF CURRENCY
                   EXPRESSLY EXCLUDED FROM THE DEFINITION OF
                   "SECURITY".................................................................................11

           B.     CRYPTOCURRENCIES ARE NOT "INVESTMENT CONTRACTS" .14

               1.     The Sales of the Digital Currencies Did Not Involve
                      an Investment of Money.............................................................15

               2.     The Sales of the Digital Currencies Did Not Create
                      a Common Enterprise.................................................................16

                     a.     There Was No Horizontal Commonality..........................16

                     b.     There Was No Strict Vertical Commonality....................17

                 3.     The Purchasers of the Digital Currencies Were Not
                      Dependent on the Efforts of Others .............................................18

CONCLUSION............................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Bank & Trust Co. v. Wallace*,
  702 F.2d 93 (6th Cir. 1983) ...................................................................................11

*Bender v. Continental Towers Ltd. P'Ship*,
  632 F. Supp. 497 (S.D.N.Y. 1986)..........................................................................19

*Boyce Motor Lines v. United States*,
  342 U.S. 337 (1952) ..................................................................................................4

*Chrysler Corp. v. Brown*,
  441 U.S. 281 (1979) ..................................................................................................9

*De Luz Ranchos Inv. v. Coldwell Banker & Co.*
  608 F.2d 1297, 1301 (9th Cir. 1979).......................................................................19

*Endico v. Fonte*,
  485 F. Supp. 2d 411 (S.D.N.Y. 2007) .....................................................................11

*Hart v. Pulte Homes of Mich. Corp.*,
  735 F.2d 1001 (6th Cir. 1984) .................................................................................19

*In re J.P. Jeanneret Assocs., Inc.*,
  769 F.Supp.2d 340 (S.D.N.Y.2011).........................................................................17

*In the Matter of Erik T. Voorhees* .........................................................................7, 8

*Keith v. Black Diamond Advisors, Inc.*,
  48 F. Supp. 2d 326 (S.D.N.Y. 1999)..................................................................11, 15

*Landreth Timber Co. v. Landreth*,
  471 U.S. 681 (1985) ................................................................................................11

*Maine Bank v. Weaver*,
  455 U.S. 551 (1982) ..........................................................................................10, 11

*Nelson v. Stahl*,
  173 F. Supp. 2d 153 (S.D.N.Y. 2001)................................................................11, 15

*Noa v. Key Futures, Inc.*,
  638 F.2d 77 (9th Cir. 1980) ...............................................................................18, 19

*Procter & Gamble Co. v. Bankers Trust Co.*,
    925 F. Supp. 1270 (S.D. Ohio 1996) ...................................................................................12

*Revak v. SEC Realty Corp.*,
    18 F.3d 81 (2d Cir. 1994) ..................................................................................... 15, 16, 17

*Sea Pines of Va. v. PLD, Ltd.*,
    399 F. Supp. 708 (M.D. Fla. 1975) ..................................................................................12

*SEC v. Glenn W. Turner Enters., Inc.*,
    474 F.2d 476 (9th Cir. 1973) ...........................................................................................18

*SEC v. Life Partners, Inc.*,
    87 F.3d 536 (D.C. App. 1996) .........................................................................................18

*SEC v. REcoin Grp. Found., LLC, et al.*,
    No. 17 Civ. 5725 (RJD) (RER) (E.D.N.Y. Sept. 29, 2017) ........................................1, 3, 6

*SEC v. Shavers*,
    2013 WL 4028182 (E.D. Tex. Aug. 6, 2013) ...........................................................passim

*SEC v. W.J. Howey Co.*,
    328 U.S. 293 (1946) ..............................................................................................passim

*Shalala v. Guernsey Memorial Hospital*,
    514 U.S. 87 (1995) ...........................................................................................................10

*Tomka v. Seiler Corp.*,
    66 F.3d 1295 (2d Cir. 1995) .............................................................................................13

*United Housing Found., Inc. v. Forman*,
    421 U.S. 837 (1975) .........................................................................................................11

*United States v. Ferris*,
    807 F.2d 269 (1st Cir.1986) ...............................................................................................4

*United States v. Sampson*,
    371 U.S. 75 (1962) .............................................................................................................4

*United States v. Ulbricht*,
    31 F. Supp. 3d 540, 570 (S.D.N.Y. 2014) ..................................................................13, 14

**Statutes and Rules**

Administrative Procedure Act ...........................................................................................passim

Securities Act and the Exchange Act ................................................................................passim

FEDERAL RULE OF CRIMINAL PROCEDURE 12(b)(3) .......................................................4

## Other Authorities

*Alternative E-Currency*, Central European University (March 31, 2014) (available
  at: http://www.etd.ceu.hu/2014/mimic_miljan.pdf) ............................................................ 14

*Attorney General's Manual on the Administrative Procedure Act* ................................ 9

Black's Law Dictionary (10th ed. 2014) ................................................................... 13

Conference 2017: *Remembering the Forgotten Investor* (Feb. 24, 2017), *available
  at:* https://www.sec.gov/news/speech/piwowar-remembering-the-forgotten-
  investor.html ...................................................................................................... 6

*Erik T. Voorhees,* Release No. 9592 (June 3, 2014), available at:
  https://www.sec.gov/litigation/admin/2014/33-9592.pdf ....................................... 8

THE GOLDMAN SACHS GROUP, INC., PROFILES IN INNOVATION: BLOCKCHAIN,
  PUTTING THEORY INTO PRACTICE, at 44 (May 24, 2016) ......................................... 6

IRS Notice 2014-21 (March 26, 2014). The IRS ................................................. 13, 14

Mary Jo White, Chair, SEC, Keynote Address at the SEC-Rock Center on
  Corporate Governance Silicon Valley Initiative (March 31, 2016), *available
  at:* https://www.sec.gov/news/speech/chair-white-silicon-valley-initiative-3-
  31-16.html ....................................................................................................... 6

*Merriam-Webster Online, available at https://www.merriam-
  webster.com/dictionary/currency* (last visited January 4, 2018) ......................... 13

Petition for Rulemaking Regarding Digital Assets (Mar. 13, 2017)
  https://www.sec.gov/rules/petitions/2017/petn4-710.pdf ....................................... 5

Release No. 3-15902 (June 3, 2014), available at:
  https://www.sec.gov/litigation/litreleases/2014/lr23090.htm ................................. 7

S. Doc. No. 248, 79th Cong., 2d Sess. 76 (1946) ..................................................... 9

Polsinelli, PC, counsel for ReCoin Group Foundation, LLC ("**ReCoin**"), DRC World Inc. ("**DRC**") and Maksim Zaslvskiy ("**Maksim**"), defendants in an action brought by the United States Securities and Exchange Commission ("**SEC**"), captioned *SEC v. Recoin Group Foundation, LLC, et al.*, No. 17 CV 5725 (RJD) (RER) submit this memo in support of the motion to dismiss the indictment filed against Maksim, as follows:

## PRELIMINARY STATEMENT

The indictment should be dismissed because it relies on the application of ambiguous and dated decisions about the definition of a security for promoting and selling two types of digital currency, ReCoin and Diamond Reserve Coin ("**DRC Coin**"). Decisions from 1946 about fractional interests in an orange grove—the now well-established *Howey* test—and subsequent precedent are both overbroad, ambiguous and dated, and would permit nearly any "medium of exchange"—the statutory exclusion from the definition of a security—to be classified as an "investment contract," and therefore, a security.[1] But digital currencies are not investment contracts, and cannot be forced into the catch-all definition of a security. Among other things, the currencies at issue here do not involve an investment of money, were not a common enterprise, and the purchasers of the digital currency were not dependent of the efforts of others for profits. Punctuating this point, "currency" is expressly excluded from the definition of a "security." For example, the Securities Act[2] and the Exchange Act[3] do not apply to transactions involving a "currency." In its own words, the Government alleges that ReCoin and DRC Coin function primarily as a medium of exchange or as "currency"[4]; not stocks, bonds, or other types of security. Thus, ReCoins and DRC Coins are expressly excluded from the scope of the Securities

---

[1] As discussed in Part II.A *infra.*
[2] Securities Act of 1933, 15 U.S.C. §§ 77a, *et seq.* (2018)
[3] Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et seq.* (2018)
[4] *See SEC v. REcoin Grp. Found., LLC, et al.,* No. 17 Civ. 5725 (RJD) (RER) (E.D.N.Y. Sept. 29, 2017); (Compl. ¶ 5.).

Act and the Exchange Act and for this reason, the Government's claims under the Securities Act and Exchange Act should be dismissed.

The other primary issue here is clarity—or lack thereof.  US citizens should not be left to guess whether their actions violate US securities laws.  And clarity here would not have been difficult to achieve; it is called rule-making.  The SEC's failure to adopt rules on the regulation of digital assets, and the general lack of clarity surrounding the creation of digital currencies, in light of Maksim's prosecution, constitutes a denial of his right to due process required by the U.S. Constitution and the Administrative Procedure Act ("**APA**").

There is an additional issue to this prosecution; the Government seeks to expand its jurisdiction into a subject never intended by Congress: the burgeoning fields of fintech and digital currencies. The court should decline the Government's effort to expand the scope of federal securities laws to include fintech and digital currencies.  It is contrary to the plain language of the securities laws and is better left to the legislative process.  Thus, the Government's indictment should be dismissed.[5]

Accordingly, whether analyzed as a currency or an investment contract, the Government's novel attempt to reclassify digital currencies as securities should be rejected.

## PROCEDURAL BACKGROUND

A grand jury sitting in this District has charged Maksim with conspiracy and substantive securities fraud counts, in contravention of Sections 10(b) and 32 of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78ff. The charges arise out of Maksim's alleged sale of digital currencies that the Government and the SEC characterize as securities that were connected to ReCoin and DRC.

---

[5] The SEC's civil claims against Maksim, ReCoin, and DRC are based on substantially similar legal theories to the Government's criminal claims, those civil claims should also be dismissed.

2

The SEC has alleged civil claims against Maksim, Recoin, and DRC for violation of Section 10(b) of the Exchange Act, as well as violations of Sections 5(a), 5(c), and 17(a) of the Securities Act §§ 77e(a), 77e(c) and 77q(a), based largely on the same underlying conduct. *See* Complaint, *SEC v. REcoin Grp. Found., LLC, et al.,* No. 17 Civ. 5725 (RJD) (E.D.N.Y. Sept. 29, 2017).

Maksim has moved to dismiss the Government's charges on the basis that: (1) the digital currencies are not "securities" within the meaning of Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1), and Section 3(a)(10) of the Exchange Act, *id.* § 78c(a)(1); (2) the digital currencies are "currencies" exempted from the securities laws; and (3) Sections 10(b) and 32 of the Exchange Act are unconstitutionally vague as applied to "digital currencies."

## FACTUAL ALLEGATIONS[6]

Maksim is a New York resident. (Compl. ¶ 7.) In 2017, Maksim founded ReCoin and DRC as limited liability companies under the laws of Nevada and Puerto Rico, respectively. (Compl. ¶¶ 8 & 9.)

DRC and ReCoin sold digital currencies in July and August 2017. The Government concedes a digital currency is a "digital representation of value that can be digitally traded and functions as (1) a medium of exchange; and/or (2) a unit of account; and/or (3) a store of value, but does not have legal tender status" in any jurisdiction." (Compl. ¶ 5.) Cryptocurrencies, sometimes referred to as "coins" or "tokens," may entitle their holders to certain rights relating to a venture in connection with which the digital currency is offered or sold. (Compl. ¶ 4.) Crypto currencies may also be listed for exchange on online platforms and they may be exchanged for virtual currencies. *Id.*

---

[6] Maksim disputes many of the allegations in the Indictment and the SEC's Complaint, but they are presented below for purposes of supporting Maksim's Motion to Dismiss only.

The Government and the SEC allege Maksim launched a website in July 2017, https://101recoin.com, for the purpose of selling a digital currency known as "ReCoin." (Compl. ¶ 8.) The ReCoin website allowed users to buy ReCoins and contained a link to a whitepaper describing how ReCoins would work. (Compl. ¶ 11.) The ReCoin website and the whitepaper, made various statements about how ReCoins would be backed by real estate. (Compl. ¶ 7.)

The Government alleges Maksim began marketing a second digital currency known as DRC Coin in July 2017. (Compl. ¶ 18-19.) The Government alleges Maksim launched a website allowing users to purchase DRC Coin and containing a link to a whitepaper explaining how DRC Coin would work. *Id.*

The Government alleges in conclusory fashion that the ReCoins and the DRC Coins constitute "securities" within the meaning of 15 U.S.C. § 77b(a)(1) and 15 U.S.C. § 78c(a)(10). As shown below, however, neither the ReCoins or the DRC Coins meet the definition of "securities" under federal securities law. Thus, Maksim's motion should be granted and both the civil and criminal cases should be dismissed.

## APPLICABLE LEGAL STANDARDS

## I.   FEDERAL RULE OF CRIMINAL PROCEDURE 12(b)(3)

A motion to dismiss an indictment challenges the adequacy of an indictment on its face. Thus, the indictment must be viewed as a whole and the allegations must be accepted as true at this stage of the proceedings. *Boyce Motor Lines v. United States,* 342 U.S. 337, 343 (1952); *United States v. Ferris,* 807 F.2d 269, 271 (1st Cir.1986). The question, then, is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *United States v. Sampson,* 371 U.S. 75, 76 (1962).

4

**ARGUMENT**

I.   **THE SEC'S FAILURE TO ADOPT RULES WITH RESPECT TO THE REGULATION OF DIGITAL ASSETS VIOLATES THE DUE PROCESS PROTECTIONS OF THE U.S. CONSTITUTION AND THE APA.**

It is both inappropriate and unfair to allow the Government to prosecute, and the SEC to sue, individuals that create cryptocurrencies for violating securities laws without proposing clear rules and regulatory guidelines in the manner prescribed by the APA.  Allowing our government to deprive citizens of their constitutional rights by means of ambiguous regulation or a government agency's policy of regulation by enforcement, is antithetical to the rights afforded in the United States Constitution.

The Government and the SEC would have this Court ignore its problematic policy of rule-making by enforcement action and informal guidance.  Indeed, while spending a considerable portion of its brief advising the court of the SEC's efforts to provide guidance to the industry on the regulation of digital assets as securities, the SEC and the Government fail to mention that there is a petition for rulemaking currently pending before the SEC.  The petition, filed by an industry participant that is registered as a broker-dealer and an alternative trading system, has asked the SEC to engage in a meaningful discussion of how to regulate fintech companies that are issuing digital assets.[7]  The petition asks the SEC to publish a concept release on the regulation of the issuance and trading of digital assets to provide suitable guidance to the industry followed by the adoption of new regulations.  Such proposed rules would be subject to the requirements of the APA and would afford the public an opportunity to comment on the proposed rules prior to their adoption by the SEC.

---

[7] Petition for Rulemaking Regarding Digital Assets, (Mar. 13, 2017) https://www.sec.gov/rules/petitions/2017/petn4-710.pdf.

5

A.     SEC Acknowledgement of the Need for Regulation of Digital Assets

As noted by Chairman Piwowar in a speech in 2017, the SEC's duties are to: (i) protect investors, (ii) maintain fair, orderly, and efficient markets, and (iii) facilitate capital formation.[8] The development of fintech offers the SEC and the financial services industry the opportunity to satisfy each of these duties.  The rapid pace of the development of fintech poses a number of challenges for the SEC and the industry.  The development of fintech over the past several years has seen an accelerating rate of adoption of the technology and the expansion of the number of digital assets.  Digital assets have been estimated to have the potential to save $2 billion each year in the US cash equities markets alone.[9]  While Chairman Piwowar recognized the duties of the SEC, other SEC chairs have also noted the lack of clarity with respect to the regulation of digital currencies.

Former SEC Chair Mary Jo White noted in a speech in 2016, "[b]lockchain technology has the potential to modernize, simplify, or even potentially replace, current trading and clearing and settlement operations."[10] However, as Chair White noted in the same speech: *"[o]ne key regulatory issue is whether blockchain applications require registration under existing [SEC] regulatory regimes* …"[11] Echoing the acknowledgement of the Chair that the law with respect to blockchain technology and fintech was unclear, the petition asked the SEC to take the necessary steps to provide fintech firms with sufficient guidance through a concept release and rulemaking.

As of the date of the filing of this motion, the SEC has elected not to publish a concept

---

[8] Michael S. Piwowar, Acting Chairman, SEC, Remarks at the "SEC Speaks" Conference 2017: *Remembering the Forgotten Investor* (Feb. 24, 2017), *available at:* https://www.sec.gov/news/speech/piwowar-remembering-the-forgotten-investor.html.

[9] THE GOLDMAN SACHS GROUP, INC., PROFILES IN INNOVATION: BLOCKCHAIN, PUTTING THEORY INTO PRACTICE, at 44 (May 24, 2016).

[10] Mary Jo White, Chair, SEC, Keynote Address at the SEC-Rock Center on Corporate Governance Silicon Valley Initiative (March 31, 2016), *available at:* https://www.sec.gov/news/speech/chair-white-silicon-valley-initiative-3-31-16.html.

[11] *Id.* (emphasis added).

release or proposed rules on the regulation of digital assets that would provide guidance to the fintech industry.  Instead, the SEC has elected to regulate the industry through enforcement actions and informal guidance that is not subject to the requirements of the APA.

**B.**     <u>The Problem with Characterizing Digital Assets as Securities</u>

Currently, the SEC evaluates digital assets in the same manner as traditional assets. [12] The SEC has not adopted rules or regulations with respect to the regulation of digital assets. The SEC also has not provided interpretative guidance on the regulation of digital assets. Instead, the SEC has initiated a number of enforcement actions that provide a limited degree of regulatory guidance. The definition of security is sufficiently expansive to grant the SEC broad authority to regulate a variety of products as securities.  Though the definition of security is very broad, it does not explicitly include digital currencies or other digital assets.  In several enforcement actions, the SEC has argued digital offerings are investment contracts.[13]

What constitutes an investment contract is determined based on the test articulated by the U.S. Supreme Court in *Securities and Exchange Commission v. W. J. Howey Co*.  Under the *Howey* test, an investment contract is a contract, transaction, or scheme involving (1) an investment of money, (2) in a common enterprise, (3) with the expectation that profits will be derived from the efforts of the promoter or a third party. *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946). The *Howey* Test brings many non-traditional offerings within the scope of the term security.  The test, however, provides limited guidance with respect to digital assets.

---

[12] The definition of "security" under the Securities Act and the Exchange Act are nearly identical and broad enough to cover digital assets. Section 2(a)(1) of the Securities Act defines a "security" as: any note, stock, treasury stock, security future, security-based swap, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, **investment contract**, voting-trust certificate, certificate of deposit for a security, … or, in general, any interest or instrument commonly known as a "security."  Securities of 1933 § 2(a)(1).

[13] *See e.g., SEC v. Shavers*, No. 4:13-CV-416, *see also In the Matter of Erik T. Voorhees*, Securities Act Release No. 3-15902 (June 3, 2014), available at: https://www.sec.gov/litigation/litreleases/2014/lr23090.htm.

C.      SEC Enforcement Actions

Cases such as *Securities and Exchange Commission v. Brendon T. Shavers and Bitcoin Savings and Trust* and *In the Matter of Erik T. Voorhees* indicate that investment schemes involving digital assets, specifically Bitcoin, constitute the sale of securities and must be registered under the securities laws. In *Shavers*, the respondent was found to have offered unregistered investments of Bitcoin in a Ponzi scheme. *SEC v. Shavers*, No. 4:13-CV-416 (E.D. Tex. Aug. 26, 2014).  The SEC analyzed the investments under the *Howey* test and deemed them to be investment contracts. *Id.* The SEC stated that "it is clear that Bitcoin can be used as money," but focused on their use as investments in the Ponzi scheme that was organized by the respondent. *Id.* The SEC did not specifically address whether Bitcoins as units of digital currency constitute securities. *Id.* Instead, it focused on the Ponzi scheme through which the investments were made. *Id.*

In *Voorhees*, the respondent was found to have improperly raised Bitcoins by means of an unregistered sale of shares in entities that he owned.[14]   Voorhees publicly promoted investments in the two entities on the internet, but filed no registration statement with the SEC and no exemption from registration was applicable to these transactions. The SEC stated that, "[a]ll issuers selling securities to the public must comply with the registration provisions of the securities laws, including issuers who seek to raise funds using Bitcoin."[15]

---

[14] *See In the Matter of Erik T. Voorhees,* Release No. 9592 (June 3, 2014), available at: https://www.sec.gov/litigation/admin/2014/33-9592.pdf.

[15] *See id.*

D.      The APA and Rule Making

The APA governs the work of administrative agencies of the federal government, including how they propose and adopt regulations.[16] To protect citizens, the APA also grants the judiciary oversight over all agency actions.  5 U.S.C. § 706 (2018).  The APA is a cornerstone of U.S. administrative law that applies to both the federal executive departments and the independent agencies.  As noted by Senator Patrick McCarran in 1946, the APA is "a ***bill of rights*** for the hundreds of thousands of Americans whose affairs are controlled or regulated in one way or another" by federal government agencies.[17]   The Senator also noted that the APA is "designed to provide guarantees of due process in administrative procedures."[18]

To provide constitutional safeguards, the APA creates a framework for regulating agencies and their work. According to the *Attorney General's Manual on the Administrative Procedure Act*, drafted after the 1946 enactment of the APA, the basic purposes of the APA are the following: ***(i) to require agencies to keep the public informed of their*** organization, procedures and ***rules;*** (ii) to provide for public participation in the rulemaking process, for instance through public commenting; (iii) to establish uniform standards for the conduct of formal rulemaking and adjudication; and (iv) to define the scope of judicial review.  *U.S. Department of Justice, "Attorney General's Manual on the Administrative Procedure Act"* (1947) (emphasis added).

It is a matter of public record that the SEC has not engaged in the three-step procedure for creating a rule regarding the enforcement of securities laws with respect to cryptocurrency.

---

[16] The APA establishes the procedures federal administrative agencies use for rule making.  5 U.S.C. § 551(5) (2018). Section 4 of the APA prescribes a three-step procedure for "notice and comment rulemaking." 5 U.S.C. § 553 (2018). Rules issued through this process have the "full force and effect of law. *Chrysler Corp. v. Brown,* 441 U.S. 281, 302–303 (1979).

[17] ADMINISTRATIVE PROCEDURE ACT: LEGISLATIVE HISTORY, S. Doc. No. 248, 79th Cong., 2d Sess. 76 (1946)

[18] *Id.*

There is a mechanism by which agencies can issue "interpretive rules," without undergoing notice and comment procedures. 5 U.S.C. § 553(b)(A) (2018). The critical feature of an interpretative rule is that it is "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *Shalala v. Guernsey Memorial Hospital,* 514 U.S. 87, 99 (1995). Interpretative rules "do not have the force and effect of law and are not accorded that weigh in the adjudicatory process." *Id.*

Here, the SEC cannot claim that it has issued any interpretive rule with respect to the applicability of securities laws to cryptocurrencies until well after the unfortunate prosecution of and enforcement action against Maksim here. Even if the Government could establish this, they do not have the force and effect of law and should not be "accorded that weight" by this Court. *Id.* Instead the SEC has used informal guidance and the enforcement process to direct the industry while frequently noting that the determination of whether something is a security is based on the facts and circumstances. Such an approach violates the letter and the spirit of the APA in that it denies the public the opportunity to comment on proposed rules that regulate the industry. The SEC has failed to provide guidance to the fintech industry, including Maksim, DRC, Recoin, and other defendants in criminal and SEC enforcement actions by failing to propose rules with respect to the regulation of digital assets including initial coin offerings. The failure to publish rules on the regulation of digital assets has denied Maksim the due process protections that are the fundamental purpose of the APA and are embodied in the US Constitution.

## II.   MAKSIM DID NOT SELL "SECURITIES"

The Government brings a total of four claims, all of which arise under the Securities Act and the Exchange Act. Congress "did not intend to provide a broad federal remedy for all fraud" when it adopted the securities laws. *Maine Bank v. Weaver*, 455 U.S. 551, 556 (1982). Rather,

the securities laws apply only if the transactions at issue fall within the definition of "security." *Id. see also Nelson v. Stahl*, 173 F. Supp. 2d 153, 163 (S.D.N.Y. 2001) (elements of claim under Section 10(b) and Rule 10b-5 include "purchase or sale of securities"); 15 U.S.C. § 77q(a) (making it unlawful for person "in the offer or sale of any securities" to use interstate commerce to further fraudulent scheme); 15 U.S.C. § 77e(a) & (c) (prohibiting sale of unregistered securities). Likewise, the Government's enforcement jurisdiction under both the Securities Act and the Exchange Act depends on the existence of a "security" as defined in those statutes. *See* U.S.C. §§ 77t, 77v, 78u & 78aa. Thus, to avoid dismissal of the indictment, the Government must plausibly allege that ReCoins and DRC Coins constitute "securities" under federal law. *See American Bank & Trust Co. v. Wallace*, 702 F.2d 93, 97 (6th Cir. 1983) (affirming dismissal of claims under securities laws when transaction was not a security).

Whether a financial instrument constitutes a "security" is a question of statutory interpretation. *See Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685-86 (1985). The 1933 Act and the 1934 Act contain similar, but not identical definitions of "security." *Compare* 15 U.S.C. § 77b(a)(1) *with* 15 U.S.C. § 78c(a)(10). Despite the minor differences between the statutes, courts treat them identically "in decisions dealing with the scope of the term." *Landreth*, 471 U.S. at 686 n.1; *United Housing Found., Inc. v. Forman*, 421 U.S. 837, 847 n.12 (1975). As is relevant here, courts regularly analyze whether a transaction constitutes a "security" in deciding a motion to dismiss. *See, e.g., Endico v. Fonte*, 485 F. Supp. 2d 411, 415 (S.D.N.Y. 2007); *Keith v. Black Diamond Advisors, Inc.*, 48 F. Supp. 2d 326, 335 (S.D.N.Y. 1999).

### A.   CRYPTOCURRENCIES ARE A FORM OF CURRENCY EXPRESSLY EXCLUDED FROM THE DEFINITION OF "SECURITY"

The definition of security in the 1933 and 1934 Acts does not include the term

"digital currency"[19] and no U.S. court has held that digital currencies are "securities."[20] In fact, the Exchange Act expressly excludes "currency" from the definition of security. *See* 15 U.S.C. § 78c(a)(10) ("The term 'security' means . . . but shall not include currency"); *see also Procter & Gamble Co. v. Bankers Trust Co.*, 925 F. Supp. 1270, 1280 n.4 (S.D. Ohio 1996) ("underlying instrumentality of the DM swap was not a security, because the value of the DM swap was based on a foreign currency, which is not a security as defined in the 1933 and 1934 Acts"); *Sea Pines of Va. v. PLD, Ltd.*, 399 F. Supp. 708, 711-12 (M.D. Fla. 1975) (holding that note was not a security because it was merely a cash substitute and therefore within the exclusion for "currency" contained in the Exchange Act). Thus, the statute and case law are clear that if an instrument is a currency, it cannot also be a security under U.S. law.

In this case, the Government's own allegations prove that digital currencies like ReCoin and DRC Coin are a form of "currency." The securities laws do not define "currency," but the

---

[19] *See* 15 U.S.C. § 77b(a)(1) ("The term 'security' means any note, stock, treasury stock, security future, security-based swap, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.") and 15 U.S.C. § 78c(a)(10) ("The term 'security' means any note, stock, treasury stock, security future, security-based swap, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.").

[20] One court has, however, held that an investment into a digital hedge fund comprised of digital currencies was a security. *See SEC v. Shavers*, 2013 WL 4028182, (E.D. Tex. Aug. 6, 2013). Notably, *Shavers* limited its holding to whether shares of the hedge fund investment were securities, but the court did not go as far as the SEC seeks to go in this case. Thus, *Shavers* is inapposite here.

plain-language definition of the word and the Government's allegations about the attributes possessed by digital currencies make it clear that ReCoin and DRC Coin are "currency."

First, when dealing with issues of statutory interpretation, courts look to the plain language of the words used. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1314 (2d Cir. 1995) (noting "the plain meaning of a statute is normally controlling, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters") (quotations and alterations omitted). Here, the plain language definition of "currency" is "[a]n item (such as a coin, government note, or banknote) that circulates *as a medium of exchange*." Black's Law Dictionary (10th ed. 2014) (emphasis added); *see also Merriam-Webster Online, available at https://www.merriam-webster.com/dictionary/currency* (last visited January 4, 2018) (defining currency as "a medium of exchange"). This is the exact same language the Government alleges in its Complaint to describe digital currencies like ReCoin and DRC Coin. (*See* Compl. ¶ 5) (describing digital currency as a "digital representation of value that can be digitally traded and functions as (1) a medium of exchange; and/or (2) a unit of account; and/or (3) a store of value, but does not have legal tender status" in any jurisdiction). Thus, the plain language analysis supports dismissal of the SEC's claims.

Case law also recognizes that digital currencies function as a medium of exchange. *See United States v. Ulbricht*, 31 F. Supp. 3d 540, 570 (S.D.N.Y. 2014) (noting "[i]ndeed, the only value for Bitcoin [a form of digital currency] lies in its ability to pay for things—it is digital and has no earthly form; it cannot be put on a shelf and looked at or collected in a nice display case."). Similarly, IRS guidance on virtual currencies describes them as "as a medium of exchange, a unit of account, and/or a store of value." IRS Notice 2014-21 (March 26, 2014). The IRS further notes that virtual currencies can operate like paper or coin money despite the lack of

13

legal tender status. *Id.* Thus, applying case law definitions to the SEC's own allegations, digital currency is a form of "currency" and exempt from the definition of securities.

Second, the alleged attributes of digital currencies like ReCoin and DRC Coin support the exclusion of digital currencies from the definition of "securities." Unlike stocks, debentures, bonds, etc., which are primarily used as investments, the primary function of digital currencies is the ability to purchase goods or services. *See Ulbricht*, 31 F. Supp. 3d at 570 (ability to use digital currency as payment is critical feature); IRS Notice 2014-21 (noting that "convertible virtual currencies" can substitute for currency issued as legal tender). Indeed, foreign regulators have noted this feature of digital currencies and have treated them accordingly.[21] In this case, the SEC acknowledges that a digital currency is a "medium of exchange," and thus, the SEC's own allegations prove that ReCoins and DRC Coins can function as a form of currency, unlike stocks or bonds or the other forms of security contained within the statutory definitions.

Cryptocurrencies like ReCoin and DRC Coin do not function as investment vehicles, but as "currency." Thus, ReCoin and DRC Coin are excluded from regulation as securities and the Government's indictment should be dismissed.

## B.   CRYPTOCURRENCIES ARE NOT "INVESTMENT CONTRACTS"

As shown above, ReCoin and DRC Coin are a form of "currency" and therefore, are excluded from regulation under the Securities Act and the Exchange Act. The Government and the SEC argue ReCoin and DRC Coin fall within the scope of the securities laws because they are "investment contracts." *See* 15 U.S.C. § 77b(a)(1) and 15 U.S.C. § 78c(a)(10). Such an argument is incorrect and it cannot save the Government's indictment from dismissal.

---

[21] *See generally* Miljan Mimic, *Regulatory Challenges of Alternative E-Currency*, Central European University (March 31, 2014) (available at: http://www.etd.ceu.hu/2014/mimic_miljan.pdf) (noting that foreign regulators have classified digital currencies differently depending on use).

The definition of "security" includes a number of enumerated instruments, e.g., notes, stocks, bonds, etc. But the Supreme Court concluded that the enumerated list in the Securities Act and the Exchange Act are not exclusive and that some flexibility is required. *See SEC v. WJ Howey Co.*, 328 U.S. 293, 297 (1946). Securities "of a more variable character" may be included within the category of instruments known as an "investment contract." *See id.* The securities acts do not define "investment contract," but *Howey* sets forth the test a claimant must pass to establish the existence of an investment contract. *Id.* at 298-99.

Under *Howey*, a transaction constitutes an "investment contract" if it involves a "transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *Id.* Courts have subsequently refined the *Howey* test to include the following three elements, all of which must be shown before a claim will lie under the Securities Act or the Exchange Act: (i) an investment of money or other tangible consideration; (ii) in a common enterprise; and (iii) with the expectation of profits to be derived solely from the efforts of others. *See Revak v. SEC Realty Corp.*, 18 F.3d 81, 87 (2d Cir. 1994); *see also Nelson v. Stahl*, 173 F. Supp. 2d 153, 164 (S.D.N.Y. 2001); *see also Keith*, 48 F. Supp. 2d at 332 (expanding the third prong of the Howey Test into separate elements).

1.  <u>The Sales of the Digital Currencies Did Not Involve an Investment of Money</u>

In this case, the Government alleges Maksim allowed visitors to the ReCoin and DRC websites to buy ReCoin and DRC Coin using a credit card, digital currencies, or online services like PayPal. (Compl. ¶ 9) The Government is unable to establish the first element of the *Howey* Test, i.e., an investment of money, for those persons that purchased ReCoin and DRC using digital currency. While the SEC has alleged in other cases that a purchase made with a digital

currency is an investment of money, the U.S. Supreme Court and the Second Circuit Court of Appeals have not recognized digital currency as an investment of money. The Government is also unable to establish the digital currencies meet the second and third elements of the *Howey* Test.

2.        The Sales of the Digital Currencies Did Not Create a Common Enterprise

With regard to the second element, a common enterprise, securities claimants in the Second Circuit must show either "horizontal commonality" or "strict vertical commonality;" so-called "broad vertical commonality" will not suffice. *See Revak*, 18 F.3d at 88. Horizontal commonality entails "the tying of each individual investor's fortunes to the fortunes of the other investors by the pooling of assets, usually combined with the pro-rata distribution of profits." *Id.* at 87. "'Strict vertical commonality' requires that the fortunes of investors be tied to the fortunes of the promoter." *Id.* at 88. The Government cannot satisfy either the horizontal commonality of strict vertical commonality test.

a.        *There Was No Horizontal Commonality*

With regard to horizontal commonality, the Government does not allege that ReCoin or DRC Coin purchasers would have their assets pooled into any sort of common enterprise. Nor does the Government allege that purchasers would share pro-rata distribution of the profits from a pooling of assets. Instead, the Government alleges that funds raised via the sales of ReCoin will be used to purchase real estate. (Compl. ¶¶ 9 & 11.) The Government does not allege that funds were to be "pooled" to purchase common real estate. With regard to DRC Coin, the Government states that the funds collected from the sale of DRC Coin were to be used to invest in diamonds. (Compl. ¶ 9.) But once again, the Government's allegation is deficient because the Government does not allege that funds were to be pooled to purchase diamonds.

16

Contrary to a finding of horizontal commonality, the Government alleges that both ReCoin and DRC Coin were intended to be decentralized and to operate using blockchain technology. The Government's own allegations prove that blockchain, by its very nature, is resistant to horizontal commonality.

### b.    There Was No Strict Vertical Commonality

Regarding strict vertical commonality, the Government's indictment again falls short of establishing the necessary elements of the *Howey* Test. Strict vertical commonality asks whether the fortunes of the purchaser and seller rise and fall together. *Revek*, 18 F.3d at 87**.** Here, there is no allegation that the financial positions of the purchasers of ReCoin or DRC Coin were dependent on the fortunes of Defendants, or vice versa. For example, the Government does not allege that Maksim would receive additional compensation if the value of ReCoin and/or DRC Coin increased in the future. Unlike cases in which strict verticality was held to exist, there is no allegation in this case that Maksim was paid fees based on the value of the digital currency sold. *Cf. In re J.P. Jeanneret Assocs., Inc.*, 769 F.Supp.2d 340, 360 (S.D.N.Y.2011) (holding that where investment manager was to be paid, in part, through a performance fee equal to 20% of the profits in the investment account, defendant's compensation was "dependent on the successful performance of the investment account" and strict vertical commonality). Put another way, if the value of ReCoin and DRC Coin went up or down, there was no gain or loss in compensation for Defendants. The only element of commonality in this case was the initial promotion of ReCoin and DRC Coin. While Maksim may have been the initial point of sale for all of the ReCoin and DRC Coin, that fact alone does not establish commonality for purposes of *Howey*. *See Revak*, 18 F.3d at 88 (holding that sales of condominium units were not securities despite common promotor and management company).

17

3.      The Purchasers of the Digital Currencies Were Not Dependent on the
        Efforts of Others

The Government also cannot establish the final element of the *Howey* Test, i.e., that purchasers of ReCoin and DRC Coin were entirely dependent on the actions of others for profits. To satisfy this element of *Howey*, the Government must allege facts showing that purchasers of ReCoin and Diamond Reserve Coin expected profits to come from "undeniably significant efforts," including "managerial efforts which affect the failure or success of the enterprise." *Noa v. Key Futures, Inc.*, 638 F.2d 77, 79 (9th Cir. 1980) (quoting *SEC v. Glenn W. Turner Enters., Inc.*, 474 F.2d 476 (9th Cir. 1973)); *see also SEC v. Life Partners, Inc.*, 87 F.3d 536, 545-47 (D.C. App. 1996) (explaining that Howey Test requires profits to be derived "predominantly" from the efforts of others). While a promoter who touts his experience is a factor to consider on this element of the *Howey* Test, it is not determinative. *Noa*, 638 F.2d at 79. And, critically for purposes of this case, when the value of a particular investment is dependent primarily on market forces versus the efforts of the promotors, the *Howey* Test is not satisfied. *Id.*

Here, the future value of DRC Coin depended primarily on market forces, i.e., the value of diamonds in the diamond market, and not predominantly on the efforts of Maksim and the other Defendants. The DRC Coin transactions alleged in the Government's indictment are virtually identical to the transactions in *Noa* in which the Ninth Circuit held that no investment contract existed. *See* 638 F.2d at 79 (purchase of silver bars not an investment contract). In *Noa*, the defendant sold silver bars via a series of contracts. 638 F.2d at 79. The plaintiff alleged the defendant was selling an investment contract security, but the Ninth Circuit Court of Appeals applied the *Howey* Test and rejected the plaintiff's assertion. *Id.* at 80. Notably, the purchasers in *Noa* relied on the defendant to select and store the silver, and there was the risk that the defendant could go bankrupt and jeopardize the value of the plaintiffs' purchase. *Id.* Those facts

were not enough, however, to meet the final prong of the *Howey* Test. *Id.* The same is true here. There is no allegation that Defendants would enhance or improve the diamonds that are alleged to hedge the DRC Coin. And the value of the DRC Coin was entirely dependent on the value of the diamonds that "hedged" the digital currency.

Likewise with regard to the ReCoin transactions. The Government does not allege that Maksim and the other Defendants would enhance or develop the real estate at issue. Thus, the facts alleged here align with cases like *De Luz Ranchos Inv. v. Coldwell Banker & Co.*, in which it was held that a purchase of real estate was not an investment contract because the promotor undertook no efforts to enhance the real estate at issue. *See* 608 F.2d 1297, 1301 (9th Cir. 1979); *see also Hart v. Pulte Homes of Mich. Corp.*, 735 F.2d 1001, 1005 (6th Cir. 1984) (holding that promotional representations relating to development of land insufficient to create investment contract when promotor undertakes no contractual obligation to actually improve real estate). The value of ReCoin would depend on real estate market forces, not the efforts of Maksim or the Defendants to develop a parcel of land. Moreover, the allegation that purchasers of ReCoin could expect the value of their digital currency to increase via increased real estate prices is not enough to satisfy this element of the *Howey Test. See Bender v. Continental Towers Ltd. P'Ship*, 632 F. Supp. 497, 501 (S.D.N.Y. 1986) (noting the sale of condominium and options to purchase condominium not an investment contract despite expectation of appreciation in value).

In addition, digital currencies are not passive, but instead depend on the efforts of purchasers to generate profits or growth. ReCoin and DRC Coin were nothing more than software code that provides a purchaser access to the blockchain and the blockchain can only be useful if the purchasers keep it updated with transactions. It is only through the efforts of

purchasers that a profit could be generated. Thus, the blockchain digital currencies at issue could not be under investment contracts the final element of the Howey test.

Finally, the definition of security requires courts to consider the context of the transaction. *See* 15 U.S.C. § 77b(a)(1) ("When used in this chapter, ***unless the context requires otherwise . . .***"). Here, the context in which the ReCoin and DRC Coin were offered further supports dismissal of the Government's indictment because ReCoin and DRC Coin lack the usual features of an investment contract. In particular, purchasers of ReCoin or DRC Coin did not purchase any interest in a legal entity. Maksim was not offering partnership units, but rather, mere pieces of software code that functioned as a unit of exchange. ReCoin and/or DRC Coin purchasers did not receive any equity in Recoin or DRC. Purchasers of ReCoin and DRC Coin did not become creditors or lenders to Recoin or DRC. Purchasers of ReCoin and DRC Coin would not be entitled to claim a debt owed in bankruptcy and purchasers or ReCoin and DRC Coin held no notes or other obligations from Recoin or DRC. Thus, the context of this case further establishes that it does not involve "securities" under federal law.

<u>CONCLUSION</u>

The U.S. Constitution and the APA serve to guarantee of due process rights of citizens subject to regulation by the agencies of the executive branch. The failure of the SEC to propose rules that define the scope of the regulation of digital assets constitutes a violation of the agency's duty to provide guidance to the citizens subject to regulation by the agency and a denial of the due process rights of Maksim. Instead, the Government seeks to advance a novel, unsupported theory of liability and jurisdiction in this case that has not been subject to public comments. The court should not be persuaded. As shown above, ReCoin and DRC Coin do not

constitute securities under federal law. The Securities Act and the Exchange Act do not apply and the Government's indictment should be dismissed.

POLSINELLI PC

By:     _/s/ Jason A. Nagi_____
Jason A. Nagi
600 Third Avenue
42nd Floor
New York, New York 10016
(212) 644-2092

Richard B. Levin
(*Pro Hac Vice* to be submitted)
303.583.8261
1401 Lawrence Street, Suite 2300
Denver, CO 80202

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of March, 2018, a true and correct copy of the foregoing *Memorandum of Law Supporting Maksim Zaslavskiy's Motion to Dismiss Indictment* was electronically filed with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the United States Attorney and all counsel of record.

_/s/  Jason A. Nagi_____

21