FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ NOV 02 2018 ★

BROOKLYN OFFICE

JMK:JN
F. #2017R01809

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

MAKSIM ZASLAVSKIY,

               Defendant.

- - - - - - - - - - - - - -X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 17-647 (S-1) (RJD)
(T. 15, U.S.C., §§ 78j(b) and 78ff; T. 18,
U.S.C., §§ 371, 981(a)(1)(C), 1349, 2 and
3551 et seq.; T. 21, U.S.C., § 853(p); T. 28,
U.S.C., § 2461(c))

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    <u>The Defendant and Relevant Individuals and Entities</u>

        1.    The defendant MAKSIM ZASLAVSKIY was a resident of Brooklyn, New York and the sole owner of REcoin Group Foundation, LLC and DRC World, Inc., also known as Diamond Reserve Club.

        2.    REcoin Group Foundation, LLC ("REcoin") was a limited liability company organized in or about July 2017 in Nevada with its purported place of business in Las Vegas, Nevada. REcoin purportedly engaged in the business of investing in real estate and developing real estate-related "smart contracts." REcoin was operated by the defendant MAKSIM ZASLAVSKIY and others. In or about July 2017, REcoin conducted an Initial Coin Offering ("ICO") in which REcoin made generalized solicitations for investments in REcoin using statements posted on the internet and distributed throughout the world, including in the United States (the "REcoin ICO").

3.      DRC World, Inc., also known as Diamond Reserve Club ("Diamond"), was a corporation incorporated in or about September 2017 in Puerto Rico with its purported principal place of business in Puerto Rico. Diamond purportedly engaged in the business of investing in diamonds and obtaining discounts with product retailers for individuals who purchased memberships in Diamond. In or about September 2017, Diamond announced the start of a purported Initial Membership Offering (the "Diamond IMO"), which was functionally the same as an ICO.

## II.     Relevant Terms and Definitions

4.      An "Initial Coin Offering" or "ICO" was a fundraising event during which an entity offered participants a unique "coin" or "token" in exchange for consideration. The tokens or coins were generally issued on a "blockchain" or a cryptographically secured ledger. The tokens or coins were often paid for in "virtual currency." ICOs were typically announced and promoted through the internet and email. Issuers usually released a "whitepaper" describing the project and the terms of the ICO. In order to participate in the ICO, investors were generally required to transfer funds to the issuer. After the completion of the ICO, the issuer distributed its unique coin or token to the participants. The tokens might entitle holders to certain rights related to a venture underlying the ICO, such as rights to profits, shares of assets, rights to use certain services provided by the issuer and/or voting rights. These tokens might also be listed on online platforms, often called virtual currency exchanges, and might be tradable for virtual currencies.

5.      "Virtual currency" was a digital representation of value that could be digitally traded and functioned as (a) a medium of exchange; and/or (b) a unit of account; and/or (c) a store of value, but did not have legal tender status. In other words, virtual currency was

not issued by any jurisdiction and functioned only by agreement within the community of users of that particular currency. Examples of virtual currency were Bitcoin and Ethereum.

6. A "blockchain" was a type of distributed ledger, or peer-to-peer database spread across a network, that recorded all transactions in the network in theoretically unchangeable, digitally-recorded data packages called blocks. Each block contained a batch of records of transactions, including a timestamp and reference to the previous block, linking the blocks together in a chain. The system relied on cryptographic techniques for secure recording of transactions.

7. A "smart contract" was a computer program designed to execute the terms of a contract when certain triggering conditions were met. Blockchains or distributed ledgers could record smart contracts.

8. "Online funds transfer services" such as PayPal and Stripe permitted users to purchase goods and services from websites and mobile applications using the payment methods stored in that user's account, such as their credit cards or direct debit bank accounts.

9. An "investment contract" was an investment of money in a common enterprise with a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others. An investment contract was a security as defined by Section 2(a)(1) of the Securities Act of 1933 ("Securities Act") and Section 3(a)(10) of the Securities Exchange Act of 1934 ("Exchange Act"). Investments in the REcoin ICO and the Diamond IMO were investment contracts, and therefore "securities" as defined by Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act.

III. The Fraudulent Scheme

10. In or about and between January 2017 and October 2017, the defendant MAKSIM ZASLAVSKIY, together with others, engaged in a fraudulent scheme to defraud investors and potential investors in REcoin and Diamond by inducing them to purchase purported tokens or coins associated with the REcoin ICO and the Diamond IMO through material misrepresentations and omissions.

A. REcoin

11. In or about July 2017, the defendant MAKSIM ZASLAVSKIY and his co-conspirators began advertising the REcoin ICO as a "new blockchain" token founded by ZASLAVSKIY that was "backed by real estate investments in developed economies such as the United States, U.K., Switzerland, Australia, Canada and Japan." REcoin press releases provided that REcoin would be an "easily accessible financial platform through which people from all over the world can convert their savings into a real estate backed currency for the potential of high returns or to protect their earnings from inflation." REcoin was advertised as backed by real estate investments "with some of the highest potential returns, such as short sales, foreclosures, rental properties and other related developments."

12. In or about July 2017, the defendant MAKSIM ZASLAVSKIY and his co-conspirators launched a promotional website for REcoin. The website identified ZASLAVSKIY as the Chief Executive Officer ("CEO") and founder of REcoin and several employees of REcoin in marketing and development positions. Individuals were able to invest in REcoin through its website using their credit cards, virtual currency or through online funds transfer services.

13. According to REcoin's website, the REcoin ICO was expected to run from August 7, 2017 through October 9, 2017. REcoin provided early investors with a 15 percent discount on tokens. The discount decreased as certain threshold levels of tokens were sold until the close of the ICO, at which point tokens could be purchased for one dollar per token. On July 7, 2017, REcoin issued a press release through BusinessWire, one of the companies that distributed press releases for REcoin, stating that "[t]he proceeds from the initial sale of tokens will be invested in the highly regulated real estate market," that REcoin will be "managed, tracked and authenticated through blockchain technology" and that an "international team of attorneys and programmers have been working tirelessly on creating solutions for REcoin holders to allow them to enter smart contracts in real estate." As of late August and early September 2017, a counter near the top of the REcoin website stated that over 2.8 million "REC," or REcoin tokens, had been purchased already.

14. The REcoin whitepaper, which investors could access from the website, contained additional statements about the supposed REcoin token, which the whitepaper described as "an attractive investment opportunity" which "grows in value." The whitepaper identified the defendant MAKSIM ZASLAVSKIY as the founder of REcoin, and stated that "REcoin is led by an experienced team of brokers, lawyers, and developers and invests its proceeds into global real estate based on the soundest strategies." The whitepaper also provided that the "The REcoin Purse is secured by the latest cryptocurrency tools and designed to be user-friendly and convenient." The whitepaper provided for two ways that REcoin could grow in value: (1) "through the steady increasing value of the real estate investments that REcoin is used to purchase," and (2) when the demand for REcoin rises."

15. Individuals who wanted to invest in REcoin were required to register on the REcoin website by providing an email address. Once an individual provided his or her email address, he or she received periodic communications from the defendant MAKSIM ZASLAVSKIY using the email address info@101recoin.com. One such communication indicated that REcoin raised over $1.5 million in direct REcoin token purchases during the first three days of the ICO. Similarly, on August 9, 2017, two days after the launch of the REcoin ICO, ZASLAVSKIY and his co-conspirators issued a press release entitled "REcoin ICO is a hit from the start: the first ever crypto currency hedged by real estate is selling out in droves." The press release stated that since the launch of the ICO, REcoin "raised over $1.5 million in direct REcoin token purchases" and that "[a]nother $2.3 million is the projected earnings from real estate deals that are on the table as a result of the REcoin ICO success."

16. Statements made by the defendant MAKSIM ZASLAVSKIY and others to potential investors and investors in the REcoin ICO were materially false and misleading. For example, contrary to representations made on REcoin's website, in press releases and in its whitepaper, REcoin never purchased any real estate, either before, during or after the REcoin ICO. Additionally, REcoin never consulted or hired any broker, lawyer or developer to engage in the supposed real estate investments listed in REcoin's marketing materials. REcoin also did not sell more than 2.8 million in tokens, as advertised on its website. Furthermore, while investors in REcoin transferred funds to ZASLAVSKIY and his co-conspirators and received certificates in return indicating the investors' individual ownership in REcoin tokens, no REcoin token or coin was ever developed, and therefore, investors never received any form of digital asset, token or coin.

6

17.     Based in whole or in part on material misrepresentations and omissions made by the defendant MAKSIM ZASLAVSKIY and his co-conspirators, approximately 1,000 individuals invested in the REcoin ICO.

B.  Diamond

18.     On or about September 6, 2017, the defendant MAKSIM ZASLAVSKIY and others announced in a press release that they were "switching strategies" from backing their offering with real estate to backing it with diamonds, and that "[a]ll REcoin holdings will be seamlessly converted into Diamond Reserve Coin (DRC)." Diamond was advertised as a "tokenized membership" through the blockchain-based DRC, "a brand new cryptocurrency designed for a broad range of financial transactions mainly focusing on operations with precious stones worldwide." The advertisements indicated that DRC was "hedged by physical diamonds."

19.     A release dated September 11, 2017 on Reddit (the "Reddit Release"), a news aggregation and discussion website, titled "official statement" by the defendant MAKSIM ZASLAVSKIY, the "founder and CEO of REcoin," proclaimed the supposed success of the REcoin ICO by reiterating the false statement made in prior releases that, after the REcoin ICO began on August 7, 2017, "over $1.5 million in direct REcoin token purchases [were made]." The Reddit Release announced the end of the REcoin ICO and the conversion of REcoin tokens into Diamond tokens. Potential Diamond IMO investors were offered a discount on tokens similar to the REcoin ICO discount, such that investors purchasing Diamond tokens during the early stages of the Diamond IMO would receive a 15 percent discount on tokens. As with the REcoin ICO, the discount on tokens decreased as certain threshold levels of tokens were sold until the close of the IMO, at which point Diamond tokens would be sold for one dollar each.

7

The Reddit Release also stated that "members" of the "club" were "entitled to all the opportunities and benefits they were promised at the time of joining the REcoin community." The release also offered individuals who had invested in the REcoin ICO either a refund of their investment, or the ability to convert their REcoin tokens into Diamond tokens at a discount. The release further stated that the diamonds backing the Diamond IMO were "especially stored in secure locations in the United States and fully insured for their full value."

20. In or about September 2017, the defendant MAKSIM ZASLAVSKIY and others launched a promotional website for Diamond. The Diamond website indicated that the "DRC ecosystem [was] at the pre-launch stage" as of January 2017. The website also identified ZASLAVSKIY as the founder of Diamond. Individuals were able to invest in Diamond through its website using their credit cards, virtual currency or through online funds transfer services.

21. Similar to the REcoin website, the Diamond website contained a whitepaper for the Diamond IMO. The Diamond whitepaper provided that the goals of the DRC were to "offer unique opportunities and benefits" and to "indefinitely prolong the lifespan and development of the [DRC] to increase its liquidity, visibility, [and] enhance its credibility worldwide." Similar to the Reddit Release, the Diamond whitepaper also proclaimed that the DRC was "hedged by physical diamonds which are stored in secure locations in the United States and are fully insured for their value." The Diamond whitepaper further stated that Diamond was to be "led by industry experts" and that a group would be formed to, among other things, ensure that "all diamonds are purchased at the best possible price" and "perform strategic sale/purchase transactions which would benefit the DRC, where 100% of the profit is reinvested back into diamonds."

22. Furthermore, as with REcoin, individuals who wanted to invest in Diamond were required to register on the Diamond website by providing an email address. Once an individual provided his or her email address, he or she received periodic communications from the defendant MAKSIM ZASLAVSKIY using the email address info@drc.world. In these communications, ZASLAVSKIY and his co-conspirators attempted to induce investors to purchase Diamond coins by stating, for example, that Diamond "forecast[s] a minimum growth of 10% to 15% per year." In another email, ZASLAVSKIY urged investors to buy Diamond coins and stated that "negotiations with different exchanges" were ongoing so that investors could trade Diamond coins "on external exchanges and make more profit."

23. The statements made by the defendant MAKSIM ZASLAVSKIY and others to potential investors and investors in the Diamond IMO were materially false and misleading. For example, the Reddit Release falsely stated that REcoin had sold over $1.5 million in REcoin tokens. Diamond also never purchased any diamonds or identified any diamond storage locations, as stated in the Diamond whitepaper and the Reddit Release, and no insurance was taken out on any diamonds. Additionally, contrary to representations made in the Diamond whitepaper, the Reddit Release and email communications from ZASLAVSKIY and his co-conspirators to potential investors and investors, no Diamond tokens or coins had ever been developed, and those investors who transferred funds from REcoin to Diamond were not given any coins or tokens in return.

24. Based in whole or in part on material misrepresentations and omissions made by the defendant MAKSIM ZASLAVSKIY and his co-conspirators, individuals invested in the Diamond IMO.

## COUNT ONE
(Conspiracy to Commit Wire Fraud)

25. The allegations contained in paragraphs one through 24 are realleged and incorporated as if fully set forth in this paragraph.

26. In or about and between January 2017 and October 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MAKSIM ZASLAVSKIY, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud one or more investors and potential investors in the REcoin ICO and the Diamond IMO, and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT TWO
(Conspiracy to Commit Securities Fraud)

27. The allegations contained in paragraphs one through 24 are realleged and incorporated as if fully set forth in this paragraph.

28. In or about and between January 2017 and October 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MAKSIM ZASLAVSKIY, together with others, did knowingly and willfully conspire to use and employ one or more manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the U.S. Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing one or more devices,

schemes and artifices to defraud; (b) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit upon one or more investors and potential investors in the REcoin ICO and the Diamond IMO, in connection with the purchase and sale of investments in the REcoin ICO and the Diamond IMO, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails, contrary to Title 15, United States Code, Sections 78j(b) and 78ff.

   29. In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendant MAKSIM ZASLAVSKIY, together with others, committed and caused to be committed, among others, the following:

## OVERT ACTS

   (a) On or about July 7, 2017, ZASLAVSKIY and his co-conspirators marketed REcoin as a new cryptocurrency that would be backed by real estate investments.

   (b) In or about July 2017, ZASLAVSKIY and his co-conspirators launched a promotional website for REcoin in which REcoin was marketed as the first ever cryptocurrency backed by real estate.

   (c) In or about August 2017, a counter near the top of the REcoin website stated that over 2.8 million REcoin tokens had been purchased.

   (d) On or about September 5, 2017, ZASLAVSKIY and his co-conspirators marketed Diamond as a tokenized membership in which Diamond coins were backed by diamonds.

(e) On or about September 6, 2017, ZASLAVSKIY and his co-conspirators marketed Diamond as a blockchain technology.

(f) In or about September 2017, ZASLAVSKIY and his co-conspirators launched a promotional website for Diamond.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT THREE
(Securities Fraud - REcoin)

30. The allegations contained in paragraphs one through 24 are realleged and incorporated as if fully set forth in this paragraph.

31. In or about and between January 2017 and October 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MAKSIM ZASLAVSKIY, together with others, did knowingly and willfully use and employ one or more manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the U.S. Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing one or more devices, schemes and artifices to defraud; (b) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading; and (c) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit upon one or more investors or potential investors in the REcoin ICO, in connection with the purchase

and sale of investments in the REcoin ICO, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNT FOUR
(Securities Fraud - Diamond)

32. The allegations contained in paragraphs one through 24 are realleged and incorporated as if fully set forth in this paragraph.

33. In or about and between January 2017 and October 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MAKSIM ZASLAVSKIY, together with others, did knowingly and willfully use and employ one or more manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the U.S. Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing one or more devices, schemes and artifices to defraud; (b) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading; and (c) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit upon one or more investors or potential investors in the Diamond IMO, in connection with the purchase and sale of investments in the Diamond IMO, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Sections 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

34.     The United States hereby gives notice to the defendant that, upon his conviction of any of the offenses charged herein, the United States will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from proceeds obtained directly or indirectly as a result of such offenses.

35.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

_____
FOREPERSON


_____
RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY: _____
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136

F. #2017R01809
FORM DBD-34
JUN. 85

No. 

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

*MAKSIM ZASLAVSKIY*

Defendant.

## SUPERSEDING INDICTMENT

(T. 15, U.S.C., §§ 78j(b) and 78ff; T. 18, U.S.C., §§ 981(a)(1)(C), 1349, 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____
*Foreperson*

*Filed in open court this* _____ *day,*
*of* _____ *A.D. 20* _____

_____
*Clerk*

Bail, $ _____

*Julia Nestor, Assistant U.S. Attorney (718) 254-6297*